Filed in the DISTRICT COURT
Kay County, Oklahoma

**IN THE DISTRICT COURT IN KAY COUNTY**
**STATE OF OKLAHOMA**

NOV 1 8 2019

MARILYN THORNTON, Court Clerk
BY _____
DEPUTY

| | |
|---|---|
| MICHAEL McKINNEY, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| ALLIANCE HEALTH, INC., | ) ) |
| Defendant. | ) ) |

CASE CJ-2019-231

## PETITION

The Plaintiff Michael McKinney on behalf of himself and all others similarly situated state the following as his cause of action against the Defendant:

### PARTIES TO THE LITIGATION AND JURISDICTION OF THIS COURT

1. Michael McKinney is a resident of Kay County, Oklahoma.

2. Alliance Health (Alliance or Defendant) is an Oklahoma Corporation.

3. Alliance is a conglomerate of hospitals across Oklahoma. Alliance operates AllianceHealth Clinton, located in Clinton, Oklahoma; AllianceHealth Durant, located in Durant, Oklahoma; AllianceHelath Madill, located in Madill, Oklahoma; AllianceHealth Midwest, located in Midwest City, Oklahoma; AllianceHealth Ponca City, located in Ponca City, Oklahoma; AllianceHealth Seminole, located in Seminole, Oklahoma; and AllianceHealth Woodward, located in Woodward, Oklahoma.

4. Venue is proper in this Court because the lien at issue was filed in Kay County and the facts giving rise to this lawsuit occurred in Kay County, Oklahoma.

### ALLIANCE'S PREFERRED PROVIDER AGREEMENTS WITH HEALTH INSURANCE COMPANIES

EXHIBIT 1
Page 1 of 8

5.      Hospitals routinely enter into agreements with health insurance companies to benefit insured patients and increase the hospital's profits.  These agreements are commonly referred to as preferred provider agreements.

6.      Under the terms of a preferred provider agreement, the hospital negotiates with the health insurer payment rates for its services provided by the hospital to insured patients.  After the hospital has successfully negotiated how much the health insurer will pay for treating insured patients, the hospital further agrees that payment by the health insurer at the negotiated rate will be accepted as full payment.  The hospital agrees to hold the patient harmless for any amounts above the negotiated rate.

7.      Preferred provider agreements benefit hospitals because they provide tremendous stability to a hospital.  The hospital is guaranteed that when it treats an insured patient it will be promptly paid at a rate it has agreed to accept.  Furthermore, the hospital is able to advertise itself as a preferred provider of the health insurer.  As a preferred provider, the hospital gains access to a larger population of patients than if it were an "out of network" facility.  Patients seek treatment at preferred provider facilities.

8.      Preferred provider negotiated rates are always less than the hospital's full charge.  Nonetheless, hospitals agree to accept less than their full charge to get the benefits of being a preferred provider.

9.      Preferred provider agreements also benefit patients.  Patients seek treatment at preferred provider facilities because they are promised that their medical bills will be paid by their health insurer and that they will have no financial responsibility.  Patients pay their health insurance premium for this peace of mind.

EXHIBIT 1
Page 2 of 8

## MICHAEL McKINNEY'S CAR ACCIDENT
## AND TREATMENT AT ALLIANCEHEALTH PONCA CITY

10.     On September 27, 2018, Plaintiff was involved in a car accident that was caused

by the negligence of another driver.

11     Plaintiff suffered severe injuries to his head, chest, and shoulder.

12.     Plaintiff sought emergency treatment at AllianceHealth Ponca City.

AllianceHealth advertises itself as a preferred provider facility that accepts most major

health insurance plans.  On its website, AllianceHealth makes many representations that

the patient receives the benefit of having paid for health insurance by doing all the

hospital can do to submit the patient's bills to the appropriate health insurance company:

> When you receive a bill from us, it covers services you received at one of
> our healthcare facilities.  As a courtesy to our patients, we will bill your
> insurance company, Medicare or Medicaid on your behalf.  We will do
> everything possible to obtain payment and expedite your claim.
> ***
> We accept most major health insurance plans and managed care programs.
> ***
> We accept most insurance available in our community, including
> Medicare and Medicaid...Generally, the amount you pay will be less if
> your hospital and physicians are in-network with your health plan.

*www.myalliancehealth.com.*

13.     At the time Plaintiff was injured and received his treatment, AlliancHealth was a

preferred provider of Plaintiff's health insurance company.

14.     Despite being a preferred provider and holding itself out to the public as a

preferred provider facility interested in reducing the financial hardship of its patients,

AllianceHealth did not submit Plaintiff's medical bills to his health insurance company.

15.     Plaintiff was only at AllianceHealth Ponca City for one day.  AllianceHealth's

full charges for one day of treatment were $15,948.24.  AllianceHealth billed all of these

EXHIBIT 1
Page 3 of 8

charges to the Plaintiff, AllianceHealth did not submit any of the charges to Plaintiff's health insurer.

16.    Instead of submitting the bills to Plaintiff's health insurer, AllianceHealth filed a lien for 100% of its bill against Plaintiff's potential accident recovery.

### ALLIANCEHEALTH'S UNDISCLOSED BILLING POLICY

17.    AllianceHealth has adopted an undisclosed billing policy when it treats patients involved in accidents cause by the negligence of a third party.

18.    In the event a patient who is covered by health insurance is injured in an accident caused by a third party, AllianceHealth does not submit the patient's medical bills to the patient's health insurer.

19.    AllianceHealth is keenly aware that if the patient's bill is submitted to the patient's health insurer it will be forced to accept the preferred provider rate which is less than its full charge.

20.    Instead of submitting the patient's bill to the patient's health insurer and being required to accept the lower preferred provider rate as full payment, AllianceHealth has an undisclosed policy of filing liens against the patient's injured by the negligence of a third party.

21.    AllianceHealth makes more money by filing a lien. The liens filed by AllianceHealth are always filed for 100% of AllianceHealth's normal charges, not the lower preferred provider rate.

22.    AllianceHealth's billing policy causes great harm to its patients. Patients pay their health insurance premium to avoid the financial harm that comes with being uninsured. AllianceHealth deprives patients the benefits of having health insurance by

EXHIBIT 1
Page 4 of 8

refusing to submit the patient's bill for payment. The patient is left uninsured due to AllianceHealth conduct.

23.    AllianceHealth's billing policy is believed to be a uniform policy, indiscriminately applied at all its facilities in Oklahoma against all patients covered by health insurance.

CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this lawsuit on behalf of two classes of people. The first class of people includes:

> All people in the State of Oklahoma who, from October 21, 2014, to the present who were/are beneficiaries of an insurance plan from which AllianceHealth had agreed to accept as full payment a reduced fee for services but from whom AllianceHealth demanded and who eventually paid AllianceHealth more than the agreed to reduced fee.

The second class of people includes:

> All people in the State of Oklahoma who, from October 21, 2014, to the present who were/are beneficiaries of an insurance plan from which AllianceHealth had agreed to accept as full payment a reduced fee for services but who AllianceHealth is now demanding full payment.

25.    This action is brought and may properly be maintained as a class action under Oklahoma Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

26.    The exact number of class members is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by the Defendant. Upon information and belief, the number of putative members of the class exceeds 1,000 persons and entities.

EXHIBIT 1
Page 5 of 8

27.    Defendant's practice of refusing to submit claims for payment under previously agreed to preferred provider rates is a systematic, mechanical practice carried out by Defendant in the same manner against all of the class members.

28.    It is believed by the Plaintiff that during the class period Defendant's refusal to submit claims for payment under previously agreed to preferred provider rates has affected many Oklahoma citizens.

29.    Common questions of law and fact exist as to all class members and predominate over individual questions affecting solely individual members of the class.

30.    The claims asserted by the Plaintiff are typical of the claims of the class members because Defendant has tortiously breached the contract(s) which Plaintiff and the class were third party beneficiaries.

31.    The Plaintiff will fairly and adequately represent the interests of the members of the class by prosecuting the action.  The Plaintiff is unaware of any potential conflicts that prevent them from serving as the class representatives.

32.    If a class is not certified, the prosecution of hundreds of different actions by individuals would create substantial risk of inconsistent judgments.  Further, the prosecutions of hundreds of separate actions is uneconomical for the class and the Courts.

33.    For the reasons set forth above, the class action device is superior to other available methods for prosecuting this case.

<u>CLAIMS FOR RELIEF</u>

34.    Plaintiff incorporates all the above statements by reference.

EXHIBIT 1
Page 6 of 8

35.     Defendant's billing practice of refusing to accept previously agreed to preferred provider rates is a deceptive and unfair trade practice that inflicts substantial injury upon Plaintiff and the rest of the class.

36.     Defendant's billing practice violates Oklahoma's Consumer Protection Act.

37.     Plaintiff and all class members are third party beneficiaries to the preferred provider agreements between Defendant and the various health insurance companies.

38.     Defendant's billing practice of refusing to accept previously agreed to preferred provider rates constitutes a breach of the insurance contract(s) designed for the benefit of the Plaintiff and the class.

39.     Defendant's repeated practice of refusing to accept previously agreed to preferred provider rates, when it is fully aware it has contractually agreed to do so, constitutes a deliberate and tortuous breach of contract.

40.     As a result of Defendant's conduct impacting the first class of Plaintiffs, the first class of Plaintiffs seek damages in excess of $75,000.00 in actual damages.

41.     The second class of Plaintiffs seek injunctive relief of enjoining the Defendant from continuing to demand more than the previously agreed to preferred provider rates.

42.     Plaintiffs and the class seek punitive damages in excess of $75,000.00.

Wherefore, Plaintiff on behalf of himself and all other similarly situated seek judgment against the Defendants for actual and punitive damages in excess of $75,000.00.

EXHIBIT 1
Page 7 of 8

Respectfully submitted,

Paige Lee, OBA #16860
Lee Law
520 S. Knoblock
Stillwater, OK 74074
405-742-7452 Phone
405-338-1619 Fax
paige@paigeleelaw.com

and

Bradford D. Barron, OBA #17571
The Barron Law Firm, PLLC
PO Box 369
Claremore, OK 74018
918-341-8402 Phone
918-515-4691 Fax
bbarron@barronlawfirmok.com