# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL MCKINNEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMUNITY HEALTH SYSTEMS, INC., ) <br> et al., ) <br> ) <br> Defendants. ) | Case No. CIV-20-00365-PRW |

## ORDER

Before the Court is Defendant Kay County Oklahoma Hospital Company, LLC's ("Kay County Hospital")[1] Motion to Compel Arbitration and Stay Proceedings (Dkt. 1, Ex. 4). With the Motion, Defendant asks the Court to compel arbitration pursuant to a contractual arbitration provision and the Federal Arbitration Act and to stay proceedings pending the completion of that arbitration. Plaintiff, Michael McKinney, argues in response that Oklahoma's Uniform Arbitration Act, specifically Okla. Stat. tit. 12, § 1855, renders the arbitration clause at issue unenforceable and, through the operation of the McCarran-Ferguson Act, controls over the Federal Arbitration Act.

The McCarran-Ferguson Act is a federal statute that provides that state laws regulating or taxing the "business of insurance" control over conflicting federal statutes.

---

[1] Defendant Kay County Oklahoma Hospital Company LLC is the sole defendant remaining in this action. *See* Pl.'s Third Am. Compl. (Dkt. 30) ¶ 2.

1

The answer to this dispute, then, turns on whether a state statute regulating the contract in this case—a preferred-provider agreement between a hospital and an insurer—regulates the "business of insurance" as that term is used in the McCarran-Ferguson Act.

The Court finds, in accordance with well-established precedent, that a state statute regulating a preferred-provider agreement does not regulate the "business of insurance" for purposes of the McCarran-Ferguson Act. Accordingly, the Federal Arbitration Act controls and requires enforcement of the arbitration provision. The Court finds, further, that the case should be stayed in its entirety pending completion of the arbitration in light of the substantial, if not complete, overlap between the arbitrable and inarbitrable claims.

Defendant Kay County Oklahoma Hospital Company, LLC's Motion to Compel Arbitration and Stay Proceedings is therefore GRANTED.

### *Background*

Kay County Hospital and Aetna, a health care insurer, have a "preferred-provider" agreement (the "Managed Care Agreement") whereby Kay County Hospital agrees to charge Aetna at a lower rate for the medical services it renders to Aetna's insured. The Managed Care Agreement, like preferred-provider agreements generally, serves to lower the insurer's costs, thereby increasing its profits.[2]

---

[2] *See* PREFERRED-PROVIDER ORGANIZATION, Black's Law Dictionary (11th ed. 2019) ("A group of healthcare providers (such as doctors, hospitals, and pharmacies) that contract with a third party, such as an insurer, to provide healthcare services at a discounted cost to covered persons in a given geographic area."); *see also* Third Am. Compl. (Dkt. 30) ¶¶ 3–4 ("Hospitals routinely enter into agreements with health insurance companies to . . . increase the hospital's profits. These agreements are commonly referred to as preferred provider agreements. Under the terms of a preferred provider agreement, the hospital

On September 27, 2018, Michael McKinney, one of Aetna's insured, was involved in a motor vehicle accident caused by the negligence of another driver. As a result, he sustained injuries to his head, chest, and shoulder. Kay County Hospital provided emergency treatment for his injuries, amounting to $15,948.24 at its unadjusted rates.

On October 21, 2019, Kay County Hospital filed a hospital lien against McKinney's accident recovery for that $15,948.24. McKinney sued Kay County Hospital in response on December 11, 2019. In his view, Kay County Hospital should have billed his health insurer at the lower preferred-provider rate instead of filing a lien against his accident recovery for the full cost of his treatment. He asserts a claim for breach of contract as a third-party beneficiary under the Managed Care Agreement as well as related claims under state tort and consumer protection law. He seeks both monetary and injunctive relief.

Now, Defendant asks the Court to compel arbitration and stay proceedings pending the completion of that arbitration. To that end, Defendant argues that a third-party beneficiary's rights are subject to any conditions imposed by the contract at issue and then points to an arbitration provision in the Managed Care Agreement:[3]

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration

---

negotiates with the health insurer payment rates for its services provided by the hospital to insured patients.").

[3] Plaintiff does not challenge the legal assertion that a third-party beneficiary asserting a claim for breach of contract is subject to an arbitration provision in that contract. He also does not challenge the existence (as between Kay County Hospital and Aetna), the scope, or the validity (apart from his argument as to unenforceability based on Okla. Stat. tit. 12, § 1855) of the arbitration agreement at issue in this case.

>Association ("AAA") and conducted by a sole Arbitrator ("Arbitrator") in accordance with the AAA's Commercial Arbitration Rules ("Rules").[4]

Defendant concludes that this provision of the Managed Care Agreement, in conjunction with the Federal Arbitration Act, mandates arbitration.[5] Plaintiff argues, in response, that Oklahoma's Uniform Arbitration Act, specifically Okla. Stat. tit. 12, § 1855,[6] renders this arbitration clause unenforceable and controls over the Federal Arbitration Act by operation of the McCarran-Ferguson Act.[7] The question, then, is which statute controls, and the answer to that question turns on the applicability of the McCarran-Ferguson Act.

---

[4] Def.'s Mot. to Compel Arbitration and Stay Proceedings (Dkt. 1, Ex. 4) at 2–3.

[5] *See* 9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

[6] Okla. Stat. Ann. tit. 12, § 1855(D) provides that "[t]he Uniform Arbitration Act shall not apply to collective bargaining agreements and contracts which reference insurance, except for those contracts between insurance companies."

[7] In Plaintiff's Supplemental Response Brief to Defendant's Motion to Compel Arbitration (Dkt. 27), he asserts a new argument: that *Defendant* must demonstrate that he is a third-party beneficiary but has not done so. The Court disagrees. "In resolving a motion to compel arbitration, the Court 'accept[s] as true . . . factual allegations . . . that relate to the underlying dispute between the parties.'" *Optimum Lab. Servs. LLC v. E. El Paso Physicians' Med. Ctr., LLC*, 2017 WL 2656264, at *1 (W.D. Okla. June 20, 2017) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)). In this case, Plaintiff himself alleges that he is a third-party beneficiary under the contract. Indeed, if his breach of contract claim is to prevail, that must be true. Thus, the Court accepts this as true for purposes of determining whether to compel arbitration.

*Legal Standard*

The McCarran-Ferguson Act was enacted to ensure the continuing primacy of the states in regulating and taxing the "business of insurance."[8] To accomplish this objective, the McCarran-Ferguson Act provides, in relevant part, that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . ."[9] In effect, the McCarran-Ferguson Act creates a reverse preemption in favor of state law when regulating and taxing the "business of insurance."

The operative term, here, is "business of insurance." To fall within the ambit of the McCarran-Ferguson Act, "the state statute must be specifically directed toward the 'business of insurance,' not just 'the business of insurance companies.'"[10] The Supreme Court and the Tenth Circuit, interpreting the meaning of "business of insurance," have held that state statutes regulating cost-saving arrangements between insurers and providers of medical products and services do not regulate the "business of insurance" for purposes of the McCarran-Ferguson Act.

---

[8] *See* 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."); *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429 (1946) (". . . Congress' purpose was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance.").

[9] 15 U.S.C. § 1012(b).

[10] *EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017) (internal quotation marks omitted) (quoting *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210–11 (1979)).

In *Group Life & Health Ins. Co. v. Royal Drug Co.*, for example, the Supreme Court considered an arrangement between pharmacies and an insurer that fixed the prices of prescription drugs for the insurer.[11] The Court noted that such an agreement did not involve any underwriting or spreading of risk, but instead merely provided for the purchase of goods and services by the insurer.[12] The Court explained that "[b]y agreeing with pharmacies on the maximum prices it will pay for drugs, [the insurer] effectively reduces the total amount it must pay to its policyholders" thereby "enabl[ing] [the insurer] to minimize costs and maximize profits."[13] The Court concluded that, while "[s]uch cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums," "they are not the 'business of insurance.'"[14]

Likewise, in *EagleMed LLC v. Cox*, the Tenth Circuit held that a state statute providing for the regulation of prices of air ambulance services did not regulate the "business of insurance" for purposes of the McCarran-Ferguson Act.[15] Like the Supreme Court in *Royal Drug*, the Tenth Circuit observed that such a statute did not "serve to underwrite or spread policyholders' risks; rather, [it] 'only minimize[d] the costs [the insurer] must incur to fulfill its underwriting obligations.'"[16] Quoting *Royal Drug*, the

---

[11] *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979).

[12] *See id.* at 207–09.

[13] *Id.* at 214.

[14] *Id.*

[15] *EagleMed*, 868 F.3d at 893.

[16] *Id.* at 905.

Tenth Circuit reiterated that "cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the 'business of insurance.'"[17]

### *Discussion*

The Managed Care Agreement is an arrangement between an insurer and a medical service provider meant to lower costs for the insurer akin to the arrangement in *Royal Drug* and the statute in *EagleMed*. It does not effect the transfer or distribution of risk between insurer and insured, but is "merely [an] arrangement[] for the purchase of goods and services by [the insurer]."[18] It does not relate to an integral part of the insurer-insured relationship, but is an entirely "separate contractual arrangement[] between [an insurer] and [a business] engaged in the sale and distribution of goods and services other than insurance."[19] It is not an arrangement unique to entities within the insurance industry, but is "legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low and thereby also keep low the level of premiums charged to their policyholders."[20] Thus, to the extent Okla. Stat. tit. 12, § 1855 purports to regulate the Managed Care Agreement, it does not regulate the "business of insurance" for purposes of the McCarran-Ferguson Act. As such, the McCarran-Ferguson Act does not apply.

---

[17] *Id.* (quoting *Royal Drug*, 440 U.S. at 214).

[18] *Royal Drug*, 440 U.S. at 214.

[19] *Id.* at 216.

[20] *Id.* at 215.

With this in mind, the Court resolves the conflict between the Federal Arbitration Act and Oklahoma's Uniform Arbitration Act. The Federal Arbitration Act affirmatively declares arbitration provisions like the one at issue here "valid, irrevocable, and enforceable."[21] Oklahoma's Uniform Arbitration Act, in contrast, renders arbitration provisions in "contracts that reference insurance," with certain exceptions not relevant here, unenforceable.[22] By virtue of the Supremacy Clause,[23] the Federal Arbitration Act

---

[21] *See* 9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

[22] *See* Okla. Stat. Ann. tit. 12, § 1855(D) ("The Uniform Arbitration Act shall not apply to collective bargaining agreements and contracts which reference insurance, except for those contracts between insurance companies."); *see also Sparks v. Old Republic Home Prot. Co., Inc.*, 2020 OK 42, ¶¶ 25–26 ("After the adoption of our state Uniform Arbitration Act, we examined the predecessor to § 1855, 15 O.S. 1991 § 802 (A) (repealed 2006) which stated that the Act 'shall not apply to . . . contracts with reference to insurance except for those contracts between insurance companies.' *Cannon v. Lane*, 1993 OK 40, 867 P.2d 1235. In *Cannon*, we considered a binding arbitration provision in a health insurance contract and refused to enforce an order for arbitration because the contract between the parties 'related to insurance' falling within this exception to the Act. We also noted that 'under the authority of *Wilson, Boughton*, and 15 O.S. 1991 § 216, such a contract is void.' 1993 OK 40, ¶ 11, 867 P.2d at 1239. In 2006, the Act was recodified and 15 O.S. 1991 § 216 was replaced with the current law, 12 O.S. 2011 § 1855 (D) . . . .").

[23] U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

controls. The Federal Arbitration Act, in turn, requires submission of this dispute to arbitration in accordance with the terms of the Managed Care Agreement.[24]

However, under the terms of the Managed Care Agreement, not all of the claims in this case are arbitrable: the claims for injunctive relief are expressly excluded from arbitration.[25] Thus, the Court must determine whether the claims for injunctive relief should proceed separately or be stayed pending the outcome of arbitration. "Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim . . . ."[26] Plaintiff's claims for monetary relief (i.e., the arbitrable claims) and injunctive relief (i.e., the nonarbitrable claims) flow from a common allegation: that Defendant wrongfully filed a lien against Plaintiff's accident recovery for the full cost of his treatment instead of billing his health insurer at the lower preferred-provider rate. As such, resolution of the arbitrable claims will necessarily resolve the nonarbitrable claims. Therefore, the Court finds that the entire case should be stayed pending resolution of the arbitrable claims.

---

[24] *See Brown v. Bob Moore Auto Grp., L.L.C.*, 2019 WL 3976848, at *2 (W.D. Okla. Aug. 22, 2019) ("Under the FAA, '[d]isputes are subject to arbitration when a valid and enforceable arbitration agreement exists, and when the dispute falls within the scope of . . . the arbitration agreement.'" (citation omitted)).

[25] *See* Def.'s Mot. to Compel Arbitration and Stay Proceedings (Dkt. 1, Ex. 4) at 2–3 ("Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, *except for temporary, preliminary, or permanent injunctive relief* or any other form of equitable relief, shall be settled by binding arbitration . . . ." (emphasis added)).

[26] *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) (citation omitted).

*Conclusion*

The McCarran-Ferguson Act is not applicable and therefore the Federal Arbitration Act controls, requiring enforcement of the arbitration provision in the Managed Care Agreement. The Court finds, further, that the entire case should be stayed pending the completion of the arbitration because resolution of the arbitrable claims will have a preclusive effect on the nonarbitrable claims.

**IT IS SO ORDERED** this 3rd day of December, 2020.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE